UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| MONICA PERRYMAN,<br><br>Plaintiff,<br><br>V.<br><br>FIRST UNITED METHODIST CHURCH and DARLENE MAYE,<br><br>Defendants. | 2:06-cv-216-mef |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

### I. INTRODUCTION

On March 6, 2006, the Plaintiff, Monica Perryman, filed suit against First United Methodist Church (hereinafter "FUMC"), a Methodist Church located in Montgomery, Alabama and Darlene Maye, Director for FUMC's Early Childhood Development Center (hereinafter "ECDC") alleging numerous instances of racial discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. sec. (See Complaint). In her Complaint, the Plaintiff states that she was employed by FUMC as a teacher, and, due to her race, she suffered various forms of discrimination during and in furtherance of her employment. (Id.)

### II. ARGUMENT

Title VII of the Civil Rights Act of 1964 bars discrimination by employers against their employees on the basis of race, religion, gender, and national origin. 42 U.S.C. § 2000e-2(a). The First Amendment to the United States Constitution states, however, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. CONST. amend. I. The "Free Exercise Clause" has been

interpreted to allow religious organizations the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." Kedroff v. St. Nicholas Cathedral, 344 U.S. 94, 116, 97 L. Ed. 120, 73 S. Ct. 143 (1952).

Congress addressed the inherent tension between Title VII and the Free Exercise Clause when it exempted religious employers from the statute's prohibition of religion-based discrimination. Section 702 of Title VII, 42 U.S.C. § 2000e-1(a) reads:

> This subchapter shall not apply to an employer with respect to the employment of aliens outside any State, <u>or to a religious corporation, association, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, or society of its religious activities or to an educational institution with respect to the employment of individuals to perform work connected with the educational activities of such institution.</u>

Id. (emphasis added), see also Little v. Wuerl, 929 F.2d 944, 947-49 (3d Cir. 1991) (subjecting religious employer to a claim of religious discrimination would raise substantial questions under the Religion Clauses). The statutory exemption does not, however, relieve religious employers of liability for employment discrimination pertaining to the other protected classes enumerated in Title VII, such as race, sex, or national origin. Rayburn, 772 F.2d at 1166-67. Thus, Congress left to the judiciary the task of deciding how Title VII applies to religious organizations. The judiciary's response, first articulated by the Court of Appeals for the Fifth Circuit in McClure v. The Salvation Army, 460 F.2d 553 (5th Cir. 1972), was to create a "ministerial exception,"

which exempted the employment relationship between churches and their ministers from Title VII.[1] The McClure court reasoned:

> We find that the application of the provisions of Title VII to the employment relationship existing between . . . a church and its minister would result in an encroachment by the State into an area of religious freedom which it is forbidden to enter by the principles of the free exercise clause of the First Amendment. . . . Congress did not intend, through the non-specific wording of the applicable provisions of Title VII, to regulate the employment between church and minister.

Id. at 560, see also Patsakis v. Greek Orthodox Archdiocese of Am., 339 F. Supp. 2d 689, 693 (D. Pa. 2004).

The "ministerial exception" operates to exempt from the coverage of various employment laws the employment relationships between religious institutions and their "ministers."[2] See, e.g., Bell v. Presbyterian Church (U.S.A.), 126 F.3d 328, 332-33 (4th Cir. 1997); Dole v. Shenandoah Baptist Church, 899 F.2d 1389, 1396-97 (4th Cir. 1990); Rayburn, 772 F.2d at 1167-69. While the phrase "ministerial exception" would seem on its face to apply only to clergy, courts have broadly extended the doctrine to claims by lay employees of religious institutions when they serve a function sufficiently similar to that served by clergy. See, e.g., Shaliehsabou v. Hebrew Home of Greater Wash., 363

---

[1] The ministerial exception is well settled and widely recognized. See, e.g., Gellington v. Christian Methodist Episcopal Church, 203 F.3d 1299 (11th Cir. 2000); Bollard v. California Province of the Soc'y of Jesus, 196 F.3d 940 (9th Cir. 1999); Combs v. Central Tex. Annual Conference of the United Methodist Church, 173 F.3d 343 (5th Cir. 1999); EEOC v. Catholic Univ. of Am., 317 U.S. App. D.C. 343, 83 F.3d 455 (D.C. Cir. 1996); Young v. Northern Ill. Conference of United Methodist Church, 21 F.3d 184 (7th Cir. 1994); Scharon v. St. Luke's Episcopal Presbyterian Hosps., 929 F.2d 360 (8th Cir. 1991).

[2] "Ecclesiastical decisions are generally inviolate; civil courts are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical policy on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law. The right to choose ministers without government restriction underlies the well-being of religious community, for perpetuation of a church's existence may depend upon those whom it selects to preach its values, teach its message, and interpret its doctrines both to its own membership and to the world at large." See Rayburn v. General Conference of Seventh-Day Adventists, 772 F.2d 1164 (4th Cir. 1985).

F.3d 299, 307, reh'g en banc denied 369 F.3d 797 (4th Cir. 2004) (kosher food supervisor deemed a minister); Alicea-Hernandez, 320 F.3d at 704 (Hispanic communications manager deemed a minister), Starkman v. Evans, 198 F.3d 173 (5th Cir. 1999) (lay choir director); Catholic Univ., 317 U.S. App. D.C. 343, 83 F.3d 455 (member of university canon law faculty); and Rayburn, 772 F.2d 1164 (non-ordained associate in pastoral care); EEOC v. Southwestern Baptist Theological Seminary, 651 F.2d 277 (5th Cir. 1981) (faculty of seminary).

In order to determine what employees are treated as "clergy" for purposes of the ministerial exception, the inquiry focuses on the function of the position at issue and not on categorical notions of who is or is not a "minister." Rayburn, supra at 1168. For example, since ordination is not a prerequisite to the application of the exception, see id. at 1168-69, courts have routinely applied the exception in cases involving persons other than ordained ministers. The general rule is "if the employee's primary duties consist of **teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, he or she should be considered clergy** [for purposes of applying the exception]." Rayburn, 772 F.2d at 1169 and Patsakis v. Greek Orthodox Archdiocese of Am., 339 F. Supp. 2d 689, 693 (D. Pa. 2004) (internal quotation marks omitted) (emphasis added), see also Sanchez v. Catholic Foreign Soc'y of Am., 82 F. Supp. 2d 1338 (D. Fla. 1999) (The ministerial exception from employment discrimination liability extends to lay employees of religious institutions whose primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or participation in religious ritual and worship.)

In executing this analysis, courts have determined that teachers are inherently involved in spreading the faith of the Church for purposes of the ministerial exemption. See <u>Rayburn v. Gen. Conference of Seventh-Day Adventists</u>, 772 F.2d 1164, 1167 (4th Cir. 1985) ("perpetuation of a church's existence may depend upon those whom it selects to preach its values, teach its message, and interpret its doctrines"); <u>EEOC v. Roman Catholic Diocese</u>, 213 F.3d 795, 802 (4th Cir. 2000) (Teaching positions are ministerial because the position is "important to the spiritual and pastoral mission of the church.") <u>Id</u>. and ("The functions of the positions are bound up in the selection, presentation, and teaching [of music], which is an integral part of the [Catholic] worship and belief.") <u>Id</u>.

In the present case, the Plaintiff has clearly indicated on the face of her Complaint that she was employed as a teacher with FUMC's Early Child Development Center during the time of her alleged discrimination. Since the Plaintiff's position as a teacher with a religious institution (here the First United Methodist Church) has been interpreted by the courts to be inherently important in the perpetuation of a church's existence by supporting and upholding church doctrine, the ministerial exception applies. The Plaintiff, is, therefore, barred from bringing discrimination claims against the Defendants pursuant to Title VII.

### III. CONCLUSION

The Plaintiff cannot maintain a Title VII action against the Defendants because she was employed as a teacher with the church at the time the alleged discriminatory acts occurred. Religious teachers are barred from bringing Title VII claims because they are inherently involved with supporting and upholding church doctrine, a seminal aspect of

the function and practice of the church. The Defendants, FUMC and Darlene Maye, request that this Court dismiss the Plaintiff's claims against them.

            s/Robert A. Huffaker (HUF003)
            s/Alan T. Hargrove (HAR236)
            s/R. Brett Garrett (GAR085)
            **RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.**
            184 Commerce Street
            Post Office Box 270
            Montgomery, Alabama 36101-0270
            Tel: (334) 206-3215
            Fax: (334) 262-6277

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon:

 Monica Perryman
 4265 Burtonway Dr.
 Montgomery, Alabama 36116

by placing same in the United States Mail, postage prepaid and properly addressed on this the ____ day of _____, 2006.

            _____
            Of Counsel
            s/R. Brett Garrett (GAR085)