UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| MONICA PERRYMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 2:06-cv-216-MHT |
| vs. | ) |
| | ) |
| FIRST UNITED METHODIST | ) |
| CHURCH and DARLENE MAYE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

The Plaintiff, Monica Perryman, filed suit against First United Methodist Church (hereinafter "FUMC"), a Methodist Church located in Montgomery, Alabama, and Darlene Maye, Director for FUMC's Early Childhood Development Center (hereinafter "ECDC"), alleging numerous instances of racial discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* [Doc. 1].[1] In her Complaint, the Plaintiff states that she was employed by FUMC as a teacher, and, due to her race, she suffered various forms of discrimination during and in furtherance of her employment. [Id.] On July 26, 2006, the Plaintiff filed an Amended Complaint alleging that she was discriminated against based on her gender and asserting claims under the 13th and 14th Amendments to the U.S. Constitution; 42 USC §§ 1981, 1983, & 1985; and the Equal Pay Act of 1963. [Doc. 29.] There are no genuine issues of material fact, and Defendants are entitled to judgment as a matter of law.

---

[1] Plaintiff is not a stranger to discrimination-based litigation. In September 2000, Plaintiff sued her employer, Alfa Insurance Corporation, and her supervisor, Kathleen Brunson, alleging discrimination on the basis of race and gender. See Perryman v. Alfa Ins. Corp., Civ. Action No. 00-A-1229-N (M.D. Ala.). Plaintiff was employed as a teacher at the Alfa Childhood Development Center. See id. In deposition, Plaintiff did not provide much information regarding her previous suit, citing a "confidentiality agreement." Perryman depo., 29:2-36:15, attached hereto as **Exhibit A**. A review of the record in that case reveals that Plaintiff's claims were dismissed at the summary judgment stage.

## II.    NARRATIVE STATEMENT OF UNDISPUTED FACTS

Plaintiff is an African-American woman who began working for FUMC in August 2001. [Id., ¶7.] She taught three-year-olds for two years, then taught pre-kindergarten children. Perryman depo., 87:11-87:19. She received a wage increase at that time. Id., 87:20-87:22. Plaintiff had earned a child development certificate from Trenholm State Technical College in 1997. Id., 8:16-10:5.

Defendant Maye is the director of ECDC. Maye depo., 12:11-13:22, attached hereto as **Exhibit B**. Maye is a black female and has served as the ECDC director since August 2000. Id., 5:13-5:22; 12:11-13:22; Maye aff., ¶¶1, 2, attached hereto as **Exhibit C**. During the time period that Plaintiff worked at the center, ten out of the fifteen employees were black, and fourteen of the employees were female. Maye aff., ¶4. That is, five of the ECDC employees were white. Id. at ¶5. One male, Lomar Benson,[2] worked at ECDC while Plaintiff was employed there. Perryman depo., 124:14-125:4; 130:22-131:8; Maye aff., ¶6. Mr. Benson is black. Perryman depo., 179:10-179:12; Maye aff., ¶6.

Defendant Maye reports to the ECDC board, which is composed of church members that oversee the center. Id., 13:23-14:16. The church is incorporated, and the center is under the church "umbrella." Saunders depo., 7:7-8:18, attached hereto as **Exhibit D**. According to the ECDC policies and procedures, the center is a religious-based organization. Maye depo., 20:22-21:7. For example, prayers are said before every meal, religious stories are read to the children, and the children attend chapel every Wednesday. Id., 21:8-21:15. The ECDC teachers also teach the children the Ten Commandments as part of the curriculum. Id., 28:17-29:6. The center is funded through private tuition and FUMC. Id., 36:18-37:4.

---

[2] Plaintiff erroneously referred to Mr. Benson as "Lamar Bronson" in her deposition.

As an employee, Plaintiff understood that ECDC was a part of the church. Perryman depo., 114:22-115:15. Plaintiff taught the children about the birth of Christ during Christmastime and about the resurrection of Christ during Easter season. Id., 75:17-79:11. She also attended chapel with the children every Wednesday and handed out religious pamphlets every Wednesday for "chapel day." Id., 79:22-80:20; 81:20-82:9; 110:3-110:11. A chapel teacher taught about religious topics on "chapel day." Id., 82:19-83:8. A Bible was in Plaintiff's classroom, which the children could access every day. Id., 111:11-113:15. Before lunch every day, Plaintiff led the children in prayer. Id., 99:18-100:7. She also prompted them to pray before the morning snack. Id., 104:2-105:23. She read the children biblical-based stories in the afternoon when it was on the lesson plan. Id., 106:20-107:18. When she needed religious literature to teach from, she would get it from FUMC or from her home. Id., 108:18-109:6.

Plaintiff was terminated in March 2005. Id., 168:9-168:10. Defendant Maye testified that Plaintiff was terminated because did not follow procedures when she failed to sign a memo that had been circulated to the ECDC staff. Maye depo., 55:1-55:9; 65:3-67:13. Plaintiff was the only ECDC employee who refused to sign the memo, which dealt with calling parents at home. Id. All other ECDC employees signed the memo. Id.

Plaintiff claims that, while employed at FUMC, she was discriminated against on the basis of race and gender. [Docs. 1, 29.] In support of her claims, Plaintiff testified to the following:

1. A white female received time off for maternity leave. Perryman depo., 154:4-163:7. Plaintiff's only complaint with respect to her own maternity leave is that she alleges that Defendant Maye required her to submit a doctor's note to initiate her maternity leave. Id. Plaintiff does not know

3

       whether the aforementioned white female was similarly required to submit a doctor's note for maternity leave. Id.

2.    Plaintiff alleges that she was discriminated against based on her race because she was told that she would be fired if she did not complete her annual training requirements. Id., 163:8-179:22. Certified teachers such as Plaintiff are required to complete twelve training hours by the end of February every year. Id. Plaintiff alleges that she was discriminated against because other employees were allowed to complete their hours after the February cutoff date. Id. The other employees who received this "privilege" included both other females and other blacks. Id.

3.    Plaintiff alleges that she was discriminated against based on her race because other teachers were allowed more teachers per student in their classrooms. Id., 183:12-192:19. The other teachers allowed this "privilege" included other females, some of whom were also black. Id. Plaintiff also admitted that her teacher-student ratio met the required guidelines, i.e., the ratio for Plaintiff's classroom age group is one-to-eighteen, and Plaintiff had fifteen students. Id.

4.    Plaintiff alleges that she was discriminated against based on her race and gender because she was not allowed time off when she requested it on three occasions. Id., 61:2-70:15; 123:1-143:8; 193:4-194:12; 201:5-202:1. Plaintiff alleges that she was denied time off for her children's doctors'

appointments in February 2004 and June of some unknown year[3] and that she was denied time off in February 2004 when her son was in an automobile accident. Id. As for the February 2004 incident, Plaintiff was told that she was denied time off because she had failed to give the required two weeks' notice. Id. As for the June 2004 incident, Plaintiff admitted that she was allowed to take time off to be with her son and that she did not suffer any repercussions for doing so. Id. Plaintiff alleges that Mr. Benson, a black male employee, was allowed time off when he requested it and that "Miss Heather," a white female employee, did not show up for work one day. Id. Plaintiff admits that she does not know whether these two employees were punished for their actions. Id.

5.  Plaintiff alleges that she was discriminated against based on her gender because the male ECDC employee received a lighter workload and special favors. Id., 202:2-218:3. Plaintiff alleges that Mr. Benson was excused from assisting her because of her gender. Id. Plaintiff admits that Mr. Benson assisted other female employees at the center. Id. Plaintiff alleges that Mr. Benson did not implement lesson plans even though he was required to do so. Id.

6.  Plaintiff alleges that she was discriminated against based on her gender because she was not allowed to go before a church board before being terminated. Id., 218:4-221:7. Plaintiff alleges that Defendants have shown a pattern and practice of not allowing females to be seen before the

---

[3] Plaintiff later testified that the June incident was not related to a doctor's appointment but was instead related to "an annual thing I have to do for human resources." Id., 138:11-139:19. She could not recall why she was denied time off. Id.

5

board before being terminated. Id. Plaintiff admitted that she did not know of any other females who had not been able to go before the board before being terminated, and she did not know of any males who had been allowed this "privilege." Id. Plaintiff also admitted that she did not have any basis for this claim. Id.

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if this Court finds that there exists no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. p. 56(c). Anderson v. Liberty Lobby. Inc, 477 U.S. 242, 249 (1986); Celotex Co v. Catrett, 477 U.S. 317, 322 (1986); Turnes v. AmSouth Bank, 36 F.3d 1057, 1061 (11th Cir. 1994).

The movant's initial burden is to "show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). When the burden of proof at trial belongs to the nonmovant, as is the case here, the moving party need not "support its motion with affidavits or other similar material negating the opponent's claim," Celotex, supra, 477 U.S. at 323, but nevertheless "may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." Id. at 331. Once the moving party meets its burden, the nonmoving party must then "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, supra, 929 F.2d at 608.

While the Court will resolve all doubts as to whether the non-movant has met its burden against the moving party, Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987), neither "[m]ere general allegations which do not reveal detailed and precise facts," R Trust Corp.

v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir.), cert. denied 116 S. Ct. 74 (1995); merely colorable evidence, Brown v. City of Clewiston, 848 F.2d 1534, 1537 (11th Cir. 1988); conclusory statements, Peppers v. Coates, 887 F.2d 1493, 1498 (11th Cir. 1989); nor conjecture will create a genuine issue of material fact. Furthermore, while "claims of employment discrimination . . . present fact-intensive issues [,]…motions for summary judgment or judgment as a matter of law are appropriate to 'police the baseline'" for such claims. Mendoza v. Borden. Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (quoting Indest v. Freeman Decorating. Inc., 164 F.3d 258, 264 n.8 (5th Cir. 1999); see also Chapman v. AI Transport, 229 F.3d 1012, 1025 (11th Cir. 2000) (en banc) (holding that no special standard exists with respect to summary judgment in employment discrimination cases).

## IV.    ARGUMENT

### A. Plaintiff's claims are barred by the 'ministerial exception' to Title VII.

The "ministerial exception" operates to exempt from the coverage of various employment laws the employment relationships between religious institutions and their "ministers."[4] See, e.g., Bell v. Presbyterian Church (U.S.A.), 126 F.3d 328, 332-33 (4th Cir. 1997); Dole v. Shenandoah Baptist Church, 899 F.2d 1389, 1396-97 (4th Cir. 1990); Rayburn v. Gen. Conference of Seventh-Day Adventists, 772 F.2d 1164, 1167-69 (4th Cir. 1985). While the phrase "ministerial exception" would seem on its face to apply only to clergy, courts have broadly extended the doctrine to claims by lay employees of religious institutions when they serve a function sufficiently similar to that served by clergy. See, e.g., Shaliehsabou v. Hebrew

---

[4] "Ecclesiastical decisions are generally inviolate; civil courts are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical policy on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law. The right to choose ministers without government restriction underlies the well-being of religious community, for perpetuation of a church's existence may depend upon those whom it selects to preach its values, teach its message, and interpret its doctrines both to its own membership and to the world at large." See Rayburn v. General Conference of Seventh-Day Adventists, 772 F.2d 1164 (4th Cir. 1985).

7

Home of Greater Wash., Inc., 363 F.3d 299, 307 (4th Cir. 2004), reh'g en banc denied 369 F.3d 797 (4th Cir. 2004) (kosher food supervisor deemed a minister); Alicea-Hernandez v. Catholic Bishop of Chicago, 320 F.3d 698, 704 (7th Cir. 2003) (Hispanic communications manager deemed a minister); Starkman v. Evans, 198 F.3d 173 (5th Cir. 1999) (lay choir director); EEOC v. Catholic Univ. of Am., 83 F.3d 455 (D.C. 1996) (member of university canon law faculty); and Rayburn, supra, 772 F.2d at 1169 (non-ordained associate in pastoral care); EEOC v. Southwestern Baptist Theological Seminary, 651 F.2d 277 (5th Cir. 1981) (faculty of seminary).

In order to determine what employees are treated as "clergy" for purposes of the ministerial exception, the inquiry focuses on the function of the position at issue and not on categorical notions of who is or is not a "minister." Rayburn, supra, 772 F.2d at 1168. For example, since ordination is not a prerequisite to the application of the exception, courts have routinely applied the exception in cases involving persons other than ordained ministers. See id. at 1168-69. The general rule is that "if the employee's primary duties consist of **teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, he or she should be considered clergy** [for purposes of applying the exception]." Id. at 1169 (internal quotation marks omitted) (emphasis added); see Patsakis v. Greek Orthodox Archdiocese of Am., 339 F. Supp. 2d 689, 693 (D. Pa. 2004) (same); Sanchez v. Catholic Foreign Soc'y of Am., 82 F. Supp. 2d 1338 (D. Fla. 1999) (The ministerial exception from employment discrimination liability extends to lay employees of religious institutions whose primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or participation in religious ritual and worship).

In executing this analysis, courts have determined that teachers are inherently involved in spreading the faith of the Church for purposes of the ministerial exemption. See Rayburn, supra,

8

772 F.2d at 1167 ("perpetuation of a church's existence may depend upon those whom it selects to preach its values, teach its message, and interpret its doctrines"); EEOC v. Roman Catholic Diocese, 213 F.3d 795, 802 (4th Cir. 2000) (teaching positions are ministerial because the position is "important to the spiritual and pastoral mission of the church.").

In the present case, the undisputed facts show that Plaintiff's employment with FUMC was inherently important in the perpetuation of the church's existence by supporting and upholding church doctrine and spreading the Christian faith. For example, Plaintiff admitted that she taught the children about the birth and resurrection of Christ; she attended chapel with the children every Wednesday, where religious topics were taught; she handed out religious pamphlets to the children every Wednesday; she led them in prayer at least once a day; she prompted them to pray at least once a day; and she read them biblical-based stories. Perryman depo., 75:17-79:11; 79:22-80:20; 81:20-82:9; 82:19-83:8; 99:18-100:7; 104:2-105:23; 106:20-107:18; 110:3-110:11.

Thus, the ministerial exception is applicable in this case. The Plaintiff, is, therefore, barred from bringing discrimination claims against the Defendants pursuant to Title VII. See Gellington v. Christian Methodist Episcopal Church, Inc., 203 F. 3d 1299 (11th Cir. 2000) (affirming summary judgment in favor of defendant based on ministerial exception).

### B. Plaintiff's Title VII claims against Defendant Darlene Maye are due to be dismissed because there is no individual liability under Title VII.

Plaintiff's Complaint asserts a claim of Title VII race and sex discrimination against individual defendant Darlene Maye. The law is clear that there is no individual liability under Title VII. See Wascura v. Carver, 169 F. 3d 683, 685 (11th Cir. 1999) (noting that there is no individual liability under Title VII and citing Busby v. City of Orlando, 931 F. 2d 764, 772 (11th Cir. 1991)); Smith v. Lomax, 45 F. 3d 402, 403 n.4 (11th Cir. 1995) (individuals "cannot be held

9

liable under…Title VII"). Accordingly, any Title VII claim against individual Defendant Darlene Maye is due to be dismissed as a matter of law.

### C. **Plaintiff's Title VII claims are outside the scope of the EEOC charge.**

Plaintiff testified that she is no longer bringing any of the claims she asserted with the EEOC. Perryman depo., 144:13-145:10. A judicial complaint filed pursuant to Title VII may only "encompass…discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission." Sanchez v. Standard Brands, Inc., 431 F. 2d 455, 466 (5th Cir. 1970) (quoting King v. Georgia Power Co., 295 F. Supp 943, 947 (N.D. Ga. 1968)). "In other words, the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id.; see also King v. Seaboard Coast Line R. Co., 538 F. 2d 581, 583 (4th Cir. 1976) ("That charge [of discrimination], enlarged only by such EEOC investigation as reasonably proceeds therefrom, fixed the scope of the Charging Party's subsequent right to institute a civil suit. The suit filed may encompass only the discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge"). As a general rule, a Title VII plaintiff cannot bring claims in a civil action that were not included in her EEOC charge. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974) (citing 42 USC §2000e-5(b), (e), and (g)). This requirement is a condition precedent with which Title VII plaintiffs must comply. Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982). Plaintiff's Title VII claims fails as a matter of law because she has dropped any and all claims arising out of her EEOC charge.

### D. **Plaintiff fails to state a claim under the Equal Pay Act.**

To the extent that Plaintiff claims that the Defendants discriminated against her on the basis of race in violation of the Equal Pay Act, such claims are also due to be dismissed as a matter of law. "The Equal Pay Act applies to disparities in pay between male and female employees." Marshall v. Western Grain Co., Inc., 838 F. 2d 1165, 1171 (11th Cir. 1988). The Equal Pay Act does not protect against disparities in pay on the basis of race.

In addition, the Plaintiff has failed to present a prima facie case to support a claim under the Equal Pay Act. "An employee demonstrates a prima facie case of an Equal Pay Act violation by showing that the employer paid employees of opposite genders different wages for equal work for jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions." Hudson v. Mr. Burch Formalwear, Inc., 2006 U.S. App. LEXIS 20890 at *6-7 (11th Cir. Aug. 15, 2006). Plaintiff has not presented sufficient evidence to show that she received lower wages as a result of gender discrimination.

Even if Plaintiff had presented evidence to support a prima facie case under the Equal Pay Act, FUMC has shown that any pay difference was nondiscriminatory. See Steger v. GE, 318 F.3d 1066, 1077-78 (11th Cir. 2003) (explaining that, if plaintiff establishes a prima facie case, employer has burden of presenting a reason for pay difference other than plaintiff's sex, which plaintiff then may rebut as pretext for a sex-based differential in pay). Defendant Maye testified that the wages of ECDC employees are based on their background, experience, and education. Maye depo., 40:5-40:12. There is simply no evidence that Plaintiff received a lower wage than her male counterpart. Further, there is no evidence to suggest that her wage was based on anything other than her background, experience, and education.

### E. Plaintiff cannot establish a claim of sex or race discrimination because her co-workers who were given 'preferential treatment' were female and/or black.

11

All of Plaintiff's claims against Defendants essentially arise under her allegation that she was discriminated against based on her gender and her race.  However, in each instance of alleged discrimination, Plaintiff either admits that she has no basis for her claim or that there were no ECDC employees outside her classification that received preferential treatment.  See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) ("[a]s part of the Title VII plaintiff's prima facie case, the plaintiff must show that his employer treated similarly situated employees **outside his classification** more favorably than herself [sic]") (emphasis added).

Plaintiff's complaint with respect to maternity leave is that she alleges that Defendant Maye required her to submit a doctor's note to initiate her maternity leave.  Perryman depo., 154:4-163:7.  However, Plaintiff admits that she was able to take maternity leave.  Id.  Further, Plaintiff could not present any evidence that white female employees were treated differently with respect to maternity leave.  Id.  Plaintiff's claim is insufficient as a matter of law.

Plaintiff alleges that she was discriminated against based on her race because she was told that she would be fired if she did not complete her annual training requirements.  Id., 163:8-179:22.  Plaintiff alleges that she was discriminated against because other employees were allowed to complete their hours after the February cutoff date.  Id.  The other employees who received this "privilege" included both other females and other blacks.  Id.  Plaintiff cannot support a claim of discrimination because she cannot identify similarly situated employees outside of her classification who were treated preferentially.  In addition, Defendants are unaware of any legal authority that would support a claim for discrimination based on Plaintiff's allegation that she was told she would be fired.  See generally Hazel v. Med. Action Indus., 216 F. Supp. 2d 541, 546-7  (W.D. N.C. 2002) ("[a] written warning that results in no other discipline

is not an adverse employment action, … [a] less desirable job or more difficult job has never been the basis for an adverse employment action").

Plaintiff alleges that she was discriminated against based on her race because other teachers were allowed more teachers per student in their classrooms. Id., 183:12-192:19. The other teachers allowed this "privilege" included other females, some of whom were also black. Id. Plaintiff also admitted that her teacher-student ratio met the required guidelines, i.e., the ratio for Plaintiff's classroom age group is one-to-eighteen, and Plaintiff had fifteen students. Id. Again, Plaintiff's claim fails because she cannot identify similarly situated employees outside of her classification who received preferential treatment. See Smith v. Int'l Paper Co., 160 F. Supp. 2d 1335, 1339 (MD Ala 2001) ("a plaintiff cannot establish a prima facie case of racial discrimination by showing just that he belongs to a protected class and did not violate the work rule. He must also point to someone **outside the protected class** who disputed or admitted a violation of the work rule and who was treated better") (emphasis added) (citations omitted); Hendricks v. Baptist Health Servs., 278 F. Supp. 2d 1276, 1286 n.23 (MD Ala 2003) ("[t]he allocation of burdens and elements of a prima facie case are the same for employment claims stemming from Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., and 42 U.S.C.S. § 1981"); see also Med. Action Indus., supra, 216 F. Supp. 2d at 545 ("[i]n order to establish a prima facie claim under 42 U.S.C.S. § 1981, a plaintiff must present evidence on which he could prevail on each of the following elements: (1) that he is a member of a protected class; (2) he was qualified for his job and was meeting the employers reasonable expectations; (3) he suffered an adverse employment action; and (4) the disciplinary measures enforced against him were more severe than those enforced against **other employees who are not members of a protected class** and who engaged in comparable conduct" (emphasis added).

13

Plaintiff alleges that she was discriminated against based on her race and gender because she was not allowed time off when she requested it on three occasions. Id., 61:2-70:15; 123:1-143:8; 193:4-194:12; 201:5-202:1. Plaintiff admits that she was denied time off on one of those occasions because she failed to give the required two weeks' notice and that, on another occasion, she was allowed to take the time off she requested without repercussions. Id. Although Plaintiff alleges that two other employees received preferential treatment with respect to taking time off, Plaintiff admits that one of the employees is black and the other is female. Id. She also admitted that she does not know whether these two employees were punished for their actions. Id.

Plaintiff alleges that she was discriminated against based on her gender because the male ECDC employee received a lighter workload and special favors. Id., 202:2-218:3. Plaintiff alleges that Mr. Benson was excused from assisting her because of her gender. However, Plaintiff admits that Mr. Benson assisted other female employees at the center. Id.

Plaintiff alleges that she was discriminated against based on her gender because she was not allowed to go before a church board before being terminated. Id., 218:4-221:7. Plaintiff alleges that Defendants have shown a pattern and practice of not allowing females to be seen before the board before being terminated. Id. However, Plaintiff could not identify any other females who had not been able to go before the board before being terminated, and she did not know of any males who had been allowed this "privilege." Id. Further, Plaintiff admitted that she did not have any basis for this claim. Id.

Thus, Plaintiff has failed to present a prima facie case of discrimination. See Int'l Paper Co., supra, 160 F. Supp. 2d at 1339; Baptist Health Servs., supra, 278 F. Supp. 2d at 1286; Med. Action Indus., supra, 216 F. Supp. 2d at 545; Crews v. First Corrections Corp., 94 F. Supp. 2d

1277, 1287-89 (S.D. Ala. 2000) (granting summary judgment in reverse-discrimination case where plaintiff failed to show that the defendants treated similarly situated employees outside his classification more favorably).

### F. Plaintiff cannot rebut Defendants' legitimate, nondiscriminatory reasons for her termination.

Where, as here, a plaintiff seeks to prove intentional discrimination on the basis of race or gender by using circumstantial evidence of intent, the Court applies the framework first set out by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, a plaintiff must establish a prima facie case of discrimination. Id. at 802. After a plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason from the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 256; Combs v. Plantation Patterns, 106 F. 3d 1519, 1528 (11th Cir. 1997). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000).

Plaintiff's evidence is not significantly probative, much less does it create a question of fact as to whether Defendants harbored discriminatory animus. See Combs, supra, 106 F. 3d at 1528. Even assuming *arguendo* that Plaintiff can establish a prima facie case of discrimination, Defendants have legitimate, nondiscriminatory reasons for Plaintiff's termination. Defendant

15

Maye testified that Plaintiff was terminated because did not follow procedures when she failed to sign a memo that had been circulated to the ECDC staff. Maye depo., 55:1-55:9; 65:3-67:13. Plaintiff was the only ECDC employee who refused to sign the memo, which dealt with calling parents at home. Id. All other ECDC employees, black and white, male and female, signed the memo. Id.

### G.  Plaintiff cannot establish a claim of discrimination.

Plaintiff's Complaint asserts claims of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* [Doc. 1]. Plaintiff's Amended Complaint asserts claims of discrimination under the 13th and 14th Amendments to the U.S. Constitution; 42 USC §§ 1981, 1983, & 1985; and the Equal Pay Act of 1963. [Doc. 29.] Plaintiff has failed to present sufficient evidence in support of her claims, and Defendants are entitled to judgment as a matter of law. See Horaist v. Doctor's Hosp. of Opelousas, 255 F.3d 261 (5th Cir. 2001) (affirming dismissal because employee failed to allege racial animus to support her §1985 claim); Wong v. Stripling, 881 F.2d 200 (5th Cir. 1989) (affirming district court's dismissal of §1983 and §1985 claims because plaintiff failed to allege any facts which, if proven, would support a state action claim against defendant hospital); Seidel v Chicago Sav. & Loan Assoc., 544 F Supp 508, 509 (N.D. Ill. 1982) (dismissing plaintiff's claims because allegations of sex discrimination fall outside the scope of §1981 or the Thirteenth Amendment; §1983 and Fourteenth Amendment claims failed for lack of an allegation of state action; and §1985 claims failed for lack of an allegation as to the existence of a conspiracy).

### V.  CONCLUSION

For the foregoing reasons, Defendants FUMC and Darlene Maye respectfully request that this Court dismiss the Plaintiff's claims against them pursuant to Fed. R. Civ. P. 56.

*/s/ Bethany L. Bolger*_____
Robert A. Huffaker (HUF003)
Alan T. Hargrove (HAR236)
R. Brett Garrett (GAR085)
Bethany L. Bolger (BOL035)
Attorneys for Defendants, First United
Methodist Church and Darlene Maye

**RUSHTON, STAKELY, JOHNSTON
    & GARRETT, P.A.**
184 Commerce Street
Post Office Box 270
Montgomery, Alabama 36101-0270
Tel: (334) 206-3215
Fax: (334) 262-6277

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing upon:

Norman Hurst, Jr., Esq.
462-A Sayre Street
Montgomery, Alabama 36104

by placing same in the United States Mail, postage prepaid and properly addressed on this the 31st day of October 2006.


*/s/ Bethany L. Bolger*
Of Counsel