## FREEDOM COURT REPORTING

Page 211

1  Q. -- after 3:30?

2  A. Yes.

3  Q. Were those his only duties?

4  A. Not when he first got there.  He was

5     helping Ms. Darlene Maye.

6  Q. I'm talking about in your classroom in

7     the middle of '05 when he was a

8     co-teacher with you.

9  A. Those were his duties.

10 Q. And you're saying he didn't do those

11    duties?

12 A. He didn't do those duties.

13 Q. And the part -- and when you're saying

14    he didn't do those duties, the part he

15    failed in was the lesson plan,

16    implementing the lesson plan?

17 A. And helping with the children.

18 Q. After you left at 3:30?

19 A. During -- twelve, going into nap room

20    and help laying the cots and getting

21    the children prepared for naptime.

22 Q. So you're saying he didn't help you

23    enough?

Exhibit A

# FREEDOM COURT REPORTING

Page 212

1    A. No.  He didn't help me on the

2       playground.  He didn't help me at

3       naptime.  He didn't help in the

4       classroom.

5    Q. Okay.

6    A. He's supposed to been helping me with

7       all that.

8    Q. And he didn't help you?

9    A. No.

10   Q. And you feel like First United

11      Methodist Church and Darlene Maye have

12      discriminated against you because of

13      your color, your gender?

14   A. Gender.

15   Q. Gender, by his failure to be the

16      employee that you wanted him to be.

17      That's your claim?

18   A. No.  That she said he was supposed to

19      be.

20   Q. That she said he was supposed to be?

21   A. Right.

22   Q. So where's the discrimination?  Help me

23      there.  That's what I'm missing.

Exhibit A

## FREEDOM COURT REPORTING

1    Where's the discrimination?

2  A.  I was required to do this.

3        MR. HURST:  Say the word

4    preferential treatment.  He was given

5    preferential treatment over you.  We

6    can move on.  I mean, if you're not

7    sufficed with the answer -- I mean,

8    we've been on the same question.

9        MR. GARRETT:  Well, it's the --

10       MR. HURST:  Well, just put it

11   in your brief.  That's what I'm saying.

12   If you're not satisfied with the

13   answer, just put it in your brief.

14       MR. GARRETT:  I know.  I'm just

15   trying -- this is very bad Complaint,

16   so I'm trying to clean them up.  It's a

17   nightmare trying to figure out what --

18       MR. HURST:  Well, it's a

19   nightmare, too, on the other end.  So

20   if you want to do that, then do that on

21   your personal time.

22       MR. GARRETT:  No.  I mean, I've

23   got the right to ask her the question

Exhibit A

## FREEDOM COURT REPORTING

Page 214

1    and find out --

2         MR. HURST:  You don't have the

3    right to badger the witness.

4         MR. GARRETT:  I'm not

5    badgering.

6         MR. HURST:  Yes, you are,

7    because we've been on this same

8    question forever.

9         MR. GARRETT:  No, I haven't.

10         MR. HURST:  Well, you have your

11    answer.  Well, if there is no answer,

12    then you know how to write and put it

13    in a Complaint and respond and say,

14    Well, I don't think there's an answer.

15    Dismiss it.

16         MR. GARRETT:  Well, anyway.

17    Q. What was -- when Mr. Lamar was not

18       helping you, what was he doing?

19    A. Sitting in the office.

20    Q. Every day?

21    A. Every day.

22    Q. Did he -- at the time you all worked

23       together, did he ever do -- did he ever

Exhibit A

## FREEDOM COURT REPORTING

Page 215

1   do a good job, as far as you know?

2           (No immediate response given.)

3   Q. When you all were working together, did

4      he ever do a good job?

5   A. Did he ever do a good job?

6   Q. Yeah, when you all worked together.

7   A. That's what I'm telling you, we didn't

8      work together.  I didn't see him.

9   Q. Okay.  When you say you didn't see him,

10     you didn't see him other than naptime

11     and at 3:30?

12  A. Yes.

13  Q. And he was supposed to be in there with

14     you all day, is what you're saying?

15  A. At twelve.

16  Q. Twelve on?

17  A. Right.

18  Q. And you left at 3:30?

19  A. Yes, sir.

20  Q. Who would watch the kids after you

21     left?

22  A. He would.

23  Q. Okay.  So after you -- really, your

Exhibit A

## FREEDOM COURT REPORTING

Page 216

1  complaints with regard to how he would

2  help you would be between three and

3  when you left at 3:30?

4  A. Twelve.

5  Q. I'm sorry.  You're right.  Twelve and

6  3:30?

7  A. Yes, sir.

8  Q. And at twelve -- when do they start

9  napping?  Do they start napping at

10  twelve?

11  A. Yes.

12  Q. And they napped for how long?

13  A. Two hours.

14  Q. So they would be napping for two hours?

15  A. Yes, sir.

16  Q. Until two?

17  A. Right.

18  Q. So your complaint is his failure to

19  help you between two and 3:30 in the

20  afternoon, an hour and a half?

21  A. He didn't help during the lesson plan

22  either.

23  Q. Right, between two and -- that's what

Exhibit A

# FREEDOM COURT REPORTING

Page 217

1    I'm saying, between two and 3:30,

2    that's when you expected him to do

3    that?

4  A. Yes, sir.

5  Q. That hour and a half?

6  A. Yes, sir.

7  Q. Okay.  Ms. Perryman, as a female

8    employee, was given excessive,

9    burdensome, and unstable working

10   conditions.  Tell me about that.

11   Excessive, burdensome, and unstable

12   working conditions.

13 A. That's the workload was put all on me

14   when -- the assistant never came in to

15   help, so that was a burden on me.

16 Q. This is Mr. Lamar again you're talking

17   about?

18 A. Yes.

19 Q. Okay.  And you think that burden, that

20   you should have been assisted some more

21   and the fact that he didn't live up to

22   your expectations, you were burdened?

23 A. Yes, sir.

Exhibit A

## FREEDOM COURT REPORTING

Page 218

1  Q. Again, do you feel like you were

2     burdened because you were a female?

3  A. Yes, sir.

4  Q. The First United Methodist -- another

5     complaint.  The First United Methodist

6     Church is also fostering a policy where

7     female employees are more likely to be

8     disciplined or terminated than males.

9     What policy are you referring to?

10            (No immediate response given.)

11 Q. There's only one -- there's only one

12    male up there?

13 A. Right.

14 Q. So what policy are you talking about?

15 A. The policy and procedures of being

16    terminated, how you have to go before

17    the board.  Before you are terminated,

18    you have to go before the board and you

19    have to try to stop this from

20    happening.

21 Q. Stop what from happening?

22 A. The discrimination suit.  It -- okay.

23    Let me word it right for you so you can

Exhibit A

# FREEDOM COURT REPORTING

Page 219

1  understand.  In their policy, it states
2  that to be terminated you have to go
3  before the board.  I didn't go before
4  the board.
5  Q. Okay.
6  A. I was just terminated.
7  Q. So you believe there's a policy at
8  First United Methodist Church that
9  prior to being discharged you have to
10  be brought before a board?
11  A. Yes.
12  Q. What board?
13  A. The administrator, the board of
14  committee.
15  Q. I'm sorry?
16  A. The committee, the board of committee.
17  Q. The board of committee?
18  A. Yes.
19  Q. And is this a church board?
20  A. Yes, sir.
21  Q. Who's on it?  Do you know?
22  A. No.
23  Q. You're saying that you were not brought

Exhibit A

# FREEDOM COURT REPORTING

Page 220

1    before this committee prior to being

2    discharged?

3  A. No, sir.

4  Q. And that was due to your race or your

5    gender?

6  A. Gender.

7  Q. That was because you were female?

8  A. Yes, sir.

9  Q. So you believe that -- okay. So you're

10    saying that you were not brought before

11    this panel prior to being fired because

12    you're a female?

13  A. Yes, sir.

14  Q. And that they've established a pattern

15    and practice of not allowing females to

16    be seen before this board before being

17    terminated? Is that your claim?

18  A. Yes, sir.

19  Q. What other females haven't been able to

20    go before this board prior to being

21    terminated?

22       MR. HURST: If you don't know,

23    say I don't know.

Exhibit A

## FREEDOM COURT REPORTING

Page 221

1    A.  I don't know.

2    Q.  On the alternative, what males have

3        been allowed to?

4    A.  I don't know.

5    Q.  So you don't have any basis for that

6        claim?

7    A.  No, sir.

8    Q.  Okay.  You've made claims in this case

9        for mental distress, emotional pain and

10       anguish, lost wages.  What are you

11       claiming in lost wages?

12   A.  My hours, the twelve hours from '01 to

13       termination.

14   Q.  Okay.  So you're lost --

15               MR. HURST:  You're -- well, go

16       ahead.

17   Q.  So your lost wages claim in this case

18       is for the twelve hours a year between

19       '01 and '05 for your certificate

20       training hours you feel like you should

21       have received compensation for?

22   A.  Yes, sir.

23   Q.  Are there any other lost wages besides

Exhibit A