IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| MONICA PERRYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:06cv216-MHT |
| FIRST UNITED METHODIST | ) | (WO) |
| CHURCH and DARLENE MAYE, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

The court now has before it defendants First United
Methodist Church and Darlene Maye's motion for summary
judgment in this lawsuit, in which plaintiff Monica
Perryman, an African-American woman, claims that the
church and Maye treated her differently with respect to
time off, maternity leave, training requirements,
teacher-student ratios, unexcused absences, and pay and
that they ultimately discharged her, all because of her
race and gender. She bases her claims on various anti-
discrimination statutes, including the Civil Rights Act
of 1866, as amended, 42 U.S.C. §§ 1981, 1983, and

1985(3); the Equal Pay Act of 1963, 29 U.S.C. § 206; and Title VII of the Civil Rights Act of 1965, as amended, 42 U.S.C. §§ 1981a, 2000e through 2000e-17.[1] Jurisdiction is proper under 28 U.S.C. § 1343 (§§ 1981, 1983 and 1985(3) claims), 42 U.S.C. § 2000e-5(f) (Title VII claims), and 29 U.S.C. § 217 (Equal Pay Act claim).

For the reasons that follow, the church and Maye's summary-judgment motion will be granted.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

1.    While it is not clear if Perryman intends to rest her claims on the Title VII, a statutory basis in her original complaint but not in her amended complaint, the court will assume that she does.

Also, in response to Perryman's claims to the extent they are based on Title VII, First United and Maye assert the so-called "ministerial exception."  The court need not address the applicability of this exception because each of Perryman's claims fails on its own terms.

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion. The burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In doing so, the court must view the evidence in the light most favorable to the non-

3

moving party and draw all reasonable inferences in favor of that party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).


## II. BACKGROUND

The following facts are construed in the light most favorable to Perryman:

First United owns and operates the Early Childhood Development Center,[2] where Perryman taught for four years, beginning in 2001.[3]  Perryman first taught three-year-olds and then pre-kindergarten, until her termination in March 2005.[4]  The center, which employed 15 persons, had the following racial and gender breakdown:[5]  Five were white,

_____

2.  Defs. M. Summ. J. (Doc. no. 33), Exhibit D, Dep. of Philip Saunders, 8:3-7.

3.  <u>Id.</u>, Exhibit C, Affidavit of Darlene Maye, ¶ 3.

4.  Brief in Support of Defs. M. Summ. J. (Doc. no. 35), Dep. of Monica Perryman, 87:11-19.

5.  Affidavit of Darlene Maye, ¶ 4.

4

and ten were black;[6] one employee, Lamar Benson, was male, and the remaining employees were female.[7]

There was tension between Perryman and Center Director Maye. Maye denied Perryman time off on three occasions (although Perryman was eventually granted the time she requested on at least one occasion),[8] and Maye required Perryman to present a doctor's note in order to take maternity leave.[9] Maye also told Perryman that she would be fired if she did not complete annual training requirements by February of each year.[10] Perryman also had at least two unexcused absences from work.[11] Perryman had more students per teacher in her classroom than the

_____

6.  Id.

7.  Id., ¶¶ 4, 6.

8.  Perryman Dep., 133:5-15

9.  Id., 160:16-17.

10.  Id., 166:5-10.

11.  Id., 134:1-19; Pl. Opp. Summ. J. (Doc. no. 41), Exhibit D, Employee Time Sheet.

5

other teachers did.[12]  In March 2005, Perryman was fired after she did not sign a policy memorandum that was circulated to the staff.  First United contends that this triggered her termination.

Perryman filed a claim of discrimination with the Equal Employment Opportunity Commission, and, after receiving a right-to-sue letter, brought this lawsuit against the First United and Maye in March 2006.


### III. DISCUSSION

As stated, Perryman claims that, because of her race and gender, she was treated differently with respect to maternity leave, time off, unexcused absences, teacher-student ratio, training requirements, and pay, and ultimately was discharged.  She rests her claims on §§ 1981, 1983, and 1985(3), the Equal Pay Act, and Title VII.

---

12. Perryman dep. 217:13-15.

## A. § 1983

To state a claim for relief under § 1983, Perryman must establish that she was deprived of a right "under color of state law," <u>American Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 50 (1999), which excludes from its reach "merely private conduct, no matter how discriminatory or wrongful." <u>Id</u>. (internal quotation marks and citations omitted). Because Perryman presents no evidence that the church and Maye acted under color of state law, § 1983 cannot be a basis for any of her claims.

## B. § 1985(3)

Section 1985(3) provides a private right of action for conspiracy to interfere with civil rights. In order to state a claim under § 1985(3), Perryman must "show an agreement between 'two or more persons' to deprive [her] of [her] civil rights." <u>Dickerson v. Alachua County Comm'n</u>, 200 F.3d 761, 767 (11th Cir. 2000). Because

Perryman has produced no evidence of such, she has no claim under § 1985(3).

### C.  Equal Pay Act

To demonstrate a prima-facie case under the Equal Pay Act, Perryman must show that First United and Maye paid her and a male employee "different wages for equal work for jobs which require 'equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Irby v. Bittick, 44 F.3d 949, 1077-78 (11th Cir. 1995) (internal citations omitted). Because Perryman has submitted no evidence that she was paid less than any other employee, her Equal Pay Act claim is meritless.

### D.  Title VII and § 1981

#### 1. Claims against Maye under Title VII

Perryman's claims against Maye to the extent they are based on Title VII are mertiless, for Title VII does not

provide a cause of action against an employee in his individual capacity. Hinson v. Clinch County Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000); Scott v. Estes, 60 F.Supp.2d 1260 (M.D. Ala. 1999) (Thompson, J.).

### 2. Claims against First United under Title VII and against First United and Maye under § 1981

The Title VII race- and gender-discrimination claims against the church and the § 1981 race-discrimination claims against the church and Maye remain. Title VII prohibits race and sex discrimination, 42 U.S.C. § 2000e-2(a)(1), and § 1981 prohibits race discrimination. The analysis is the same for claims under Title VII and § 1981. Ferrill v. Parker Group, Inc., 168 F.3d 468, 472 (11th Cir. 1999).

It is well established that discrimination claims in support of which the plaintiff presents only circumstantial evidence are analyzed under the framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S.

792 (1973).  Under this framework, the plaintiff has the initial burden of establishing a prima-facie case of unlawful discrimination by a preponderance of evidence. 411 U.S. at 802.  A "prima facie case requires 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion.'" <u>Teamsters v. United States</u>, 431 U.S. 324, 358 (1977).  "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." <u>Holifield v. Reno</u>, 115 F.3d 1555, 1561-1562 (11th Cir.1997) (citations omitted).

Here, Perryman seeks to demonstrate that she was treated differently, and more severely, than were white and male employees at First United's Early Childhood Development Center.[13]  In order to establish a prima-facie

_____

13. In their motion for summary judgment, the church and Maye argue that black-male and white-female employees are not valid comparators for a black-female employee. This contention is incorrect.  <u>See</u> <u>Olmstead v. L.C. ex rel. Zimring</u>, 527 U.S. 581 (1999) (citing <u>Jefferies v. Harris County Community Action Ass'n</u>, 615 F.2d 1025 (5th

case of disparate treatment, Perryman must prove, among
other things, that employees outside her protected class
who were similarly situated were treated more favorably.
<u>Maniccia v. Brown</u>, 171 F.3d 1364, 1368 (11th Cir. 1999).
Although she points to other individuals, and alleges
that they were treated more favorably, the comparisons
she attempts to draw fail either because none of the
comparators is similarly situated or because, with those
arguably similarly situated, she does not demonstrate
difference in treatment; thus, she fails to establish a
prima facie case.  In addition, even assuming that she
could establish a prima-facie case with respect to her
termination, she fails to present evidence of pretext.


### a. Prima-Facie Case

<u>Time-off claim</u>:  Perryman claims that other teachers
were freely given time off, while she was denied time off
on more than one occasion.   However, she fails to

_____

Cir. 1980)).

identify the circumstances under which others sought time off or to provide any specific details of the times off they sought and were granted. The requirement that the comparator is similarly situated is satisfied if "the plaintiff shows that she and the employees are similarly situated in all relevant respects." <u>Jones v. Bessemer Carraway Medical Center</u>, 137 F.3d 1306, 1311 (11th Cir. 1998). Because there is no evidence that the other teachers sought time off under the circumstances similar to those under which Perryman sought time off, Perryman has failed to show that the others were similarly situated in "relevant respects."

More specifically, she states that Lamar Benson, an African-American male probationary employee was allowed time off while she was not. However, because he was a part-time employee, while she was a full-time teacher, Perryman has failed to show that Benson and she were similarly situated, and it stands to reason that the time-off policies for Benson would be different from

12

those for her.[14]    But, more importantly, the record is
unclear that the circumstances under which Benson sought
time off were comparable to those under which Perryman
sought time off.   Thus, even if the same policy applied
to both Benson and Perryman, circumstances may or may not
warrant varying from that policy.

In conclusion, Perryman goes into no detail about
other teachers' circumstances in seeking time off.   The
court thus cannot evaluate whether they were similarly
situated, and, because Perryman bears the burden of
establishing a prima-facie case, cannot simply assume
that they were, especially given indications that they
were not.

Unexcused-absences claim:    With respect to her
unexcused-absences claims, Perryman fails to show
different treatment or a similarly situated comparator.
Perryman was suspended as a result of unexcused absence.
Perryman alleges that a white woman named "Miss Heather"

---

14. Perryman dep., 128:17.

13

(Perryman does not know her full name) did not show up for work one day and was not terminated after her 'unexcused absence.' However, Perryman does not know whether Miss Heather was disciplined,[15] only that she returned to work the next day. As a result, Perryman has not shown that she and Miss Heather were similarly situated but treated differently.

In addition, according to Center Director Maye, Perryman had more than one unexcused absence and thus her suspension was based on more than one unexcused absence.[16]

Maternity-leave claim: Perryman claims that she was treated differently in that she was required to submit a doctor's note before she was allowed maternity leave. However, she does not know whether other employees who were allowed to take maternity leave were not required to

---

15. Id., 138:5-10.

16. Def. M. Summ. J., Exhibit B, Maye dep., 55:10-12.

14

get a doctor's note.[17]  Thus, she cannot establish that she was treated differently.

In her response to the summary-judgment motion, Perryman suggests that she was given less time on maternity leave than other women.  However, her deposition establishes that she did, in fact, get the same amount of time, albeit apparently because it would have been a health risk for her not to have.[18]

Teacher-student-ratio claim:  Perryman claims that, because other teachers had smaller teacher-student ratios in their classrooms, these other teachers had less classroom work than she did.  However, Perryman makes no effort to show that any of the other teachers was similarly situated.  The two alleged comparators Perryman

_____

17. Perryman dep., 128:17.

18. Id., 157:18-20 ("Q: Were you given [as much time off as the other woman?]?  A: No, sir, not by them.  By the doctor.  It was, like, a health risk."); id., 163:3-7 ("Q: Okay.  You don't have any complaints about the amount of time you were off [for maternity leave], no complaints about [your rate of pay]? [The doctor's note] is your only complaint? A: Yes, sir.").

15

points to cared for children younger than those Perryman cared for--one cared for children 9 to 18 months old, and the other for two-year-old children.[19]  Younger students could reasonably require more supervision.

In addition, to the degree that Perryman claims that Benson had less work than she, he is not a valid comparator because he was a part-time teacher.  Perryman also claims that Benson was excused from assisting her in the classroom, while he helped others.  However, again, Perryman does not show that she and the other teachers were similarly situated with regard to their classroom needs.

<u>Time-for-training claim</u>:  Perryman claims that Benson and others were given more time than she to complete training requirements.  However, Perryman's treatment with respect to the training consisted only of Center Director Maye telling her that she would be fired if she did not complete the training.  No one was fired as a

---

19.  <u>Id</u>., 186:15-23; 187:1.

16

result of not completing the training, thus, no one was treated differently from Perryman, who was, herself, not fired as a result of not completing the training. Perryman does not know whether the others were told that they would be fired. It is possible that they were all told that they would be fired if they did not complete the training. In that event, all would have been treated the same way. However, Perryman does not claim to know if this was the case. Thus, she can only show that, with respect to one element of her treatment, she does not know how others were treated, and that, in other respects, the employees were similarly treated.

In addition, even if the others were not told that they would be fired if they did not complete the training, Perryman points to no other employee with a disciplinary record similar to hers. She concedes that she had unauthorized absences before she was told that she would be fired if she did not complete the training.

<u>Termination claim</u>:  Perryman was terminated because she refused to sign a memorandum of Early Childhood Development Center policy.  Because no other employee refused to sign the memorandum, no other employee was similarly situated for the purposes establishing a prima-facie case on this claim.


### b.  Pretext

However, even if Perryman could establish a prima facie case that she waw fired because of her race or gender, First United and Maye have rebutted the presumption by coming forward with a legitimate, non-discriminatory reason for her firing.  According to the church and Maye, as stated, Perryman was fired because she failed to sign a memorandum of Early Childhood Development Center policy.  The parties do not dispute that Maye communicated policy to the center's employees by distributing memoranda for the signatures of the employees; that Perryman received the same memorandum at

18

issue as did the remainder of the employees; that she acknowledged that she had read it; and that she refused to sign it.    Indeed, she was the only employee that refused to sign the memorandum.    Disobeying the center's policy is doubtless a legitimate, nondiscriminatory reason to fire an employee.

Perryman must now come forward with some evidence of pretext.  She has failed to do so.  Perryman's evidence shows, at best, that there was a difference between what she wanted to do and what her employer allowed her to do. However, a reasonable jury could not infer from this evidence that First United and Maye intentionally discriminated against her.    Her evidence does not demonstrate that the center's reasons were unworthy of credence because, for example, of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons," Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997).  While such flaws in reasoning may, "together

with the elements of the prima facie case, suffice to show intentional discrimination," <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 511 (1993), Perryman has offered no evidence to disbelieve the center's proffered reason for firing her.

Perryman states that her unemployment form suggests that the stated reason for firing her was not the real reason, but the unemployment form itself does not support this contention. It reads, "terminated as the result of several warnings from Darlene Maye regarding non-compliance with the policies and rules of the ECDC." This statement is sufficient to encompass the disobedient behavior here--or any other behavior not in compliance with the policies of the center--and does not provide a basis to doubt the proffered explanation for Perryman's termination. Lack of compliance with the center's policies is exactly why the church and Maye say Perryman was fired.

Perryman again argues that she was denied leave with the one male and other white females were not. This contention, to the degree that it can be understood to suggest that Perryman was fired as a result of taking time off, is contradicted by the testimony; the evidence is clear that Perryman was fired not for unexcused absences but for failing to sign the memorandum. Perryman makes this clear in her testimony, Maye does the same in hers, and the timing of the absence does not suggest otherwise.

Moreover, to the extent Perryman maintains that she was fired as a result of these absences and would seek to use others who were not fired as comparators, none is a valid comparator. She knows only that one employee was not fired as a result of an unexcused absence, but this employee also signed the memorandum. There is therefore no similarly situated person for the purpose of comparison as to Perryman's firing.

21

\*\*\*

An appropriate judgment will be entered.

DONE, this the 5th day of March, 2007.

_____/s/ Myron H. Thompson_____
UNITED STATES DISTRICT JUDGE